# EXHIBIT A

HEADSTART

# Producer Agreement

This Producer Agreement (the "Agreement) made and entered into on the 3 day of NOV., 2021 (the "Effective Date"), by and between Amazon Warranty LLC (hereinafter referred to as "Producer") and **Headstart Warranty Group**, a Nevada limited liability company, whose address is 14114 North Dallas Pkwy. Ste 600, Dallas, TX 75254 (hereinafter referred to as "Administrator").

**WHEREAS,** Seller desires to sell vehicle service contracts to customers under a service contract program designed and administered by Administrator; and

**WHEREAS,** Administrator desires to assist seller in maintaining and administering the contract program for the benefit of seller and the service contract purchasers; and

**NOW THEREFORE,** for good and valuable consideration, including the mutual promises contained herein, the parties agree as follows:

1. **Definitions**

1.1. **Net Cost.** Cost is the portion of the Contract Charge to be paid to Administrator for the Contract. The fees which constitute the Net Cost are subject to revision at the sole discretion of the Administrator who shall provide 30-day notice of those changes to the Producer.

1.2. **Administrator Payment.** The amount due to Administrator for each contract sale. Such payment shall be calculated using the Administrator Cost in Exhibit A.

1.3. **Contract.** A "Contract" is each vehicle service contract under the Program administered by Administrator and sold by and/or through the Producer.

1.4. **Contract Charge.** The "Contract Charge" is the total price to be paid by the Contract Holder for the contract.

1.5. **Contract Holder.** The "Contract Holder" is the party who has been issued a Contract administered by Administrator though the Producer.

2. **Appointment of Producer as Distributor**

Pursuant to the terms and conditions of this Agreement, Administrator hereby appoints Producer to be a Distributor of the Contracts for the sole purpose of promoting and marketing the programs and selling and issuing Contracts in the jurisdictions that Administrator, in its sole discretion, determines and which are identified in Exhibit B. Producer will also perform other duties as set forth in this Agreement. Producer acknowledges that it may utilize the internet, outbound telemarketing or direct mail telemarketing to market, promote and sell the Contracts. Producer is not permitted to subcontract any of the functions to be performed by Producer outlined in this Agreement, unless expressly authorized in writing by Administrator in advance. Producer has no authority to change, alter, vary, or waive any of the terms or conditions of the Contracts.

The Administrator shall not be responsible for any acts of the Producer, its agents, its employees, salespersons, or subagents, tortuous or otherwise. It is understood that Producer, its agents, its'

employees, salespersons or sub-agents are not employees of the Administrator but are in fact considered for the purpose(s) of this Agreement to be independent contractors.

3. Contract Charges and Refunds

3.1. Upon request, Producer shall present to Administrator reports for all completed and issued Contracts if Contracts are not generated in Administrator provided Technology.

3.2. In the event a Contract Holder pays in full at the time of Contract sale, Producer agrees to collect on behalf of the Administrator, the Administrator Payment that is due to the Administrator for each Contract sold. Producer shall remit all sums due Administrator, the Administrator Payment, every 30 Days for sales in which Producer has received funds from the Contract Holder.

3.3. Producer agrees to be responsible for compliance with the federal Electronic Funds Transfer Act and Federal Reserve Regulation E (each as may be amended from time to time, and any and all successor laws) as well as any similar state or local Laws, (collectively, "EFT Laws") with respect to any payments made by a Contract Holder to Producer, pursuant to a Contract or payment plan agreement by direct debit, or pre-authorized draft, regardless of the party (i.e., Administrator) that would be primarily responsible for compliance under any such EFT Law. With respect to each such direct debit, automated clearing house ("ACH"), or pre-authorized draft, Producer hereby represents and warrants to Administrator that the Contract Holder has authorized such direct debit, ACH, or pre-authorized draft in accordance with all EFT Laws. Producer shall, upon request, promptly provide copies to Administrator of all records evidencing such authorizations. Administrator's failure to require Producer to provide any such records shall not be deemed a waiver of Producer's obligation pursuant to the preceding sentence. To the extent that any subsection constitutes a delegation of duties required by any EFT Law by Administrator to Producer, Producer hereby accepts such delegation and agrees to be fully responsible for the performance of all such duties, as if it were primarily responsible under such EFT Law.

3.4. Producer shall submit to the Administrator any request for Contract cancellations at the time of cancellation request. Producer shall retain a copy of Contract Holder's written request for cancellation and shall make such documentation available at Administrator's request. If Producer is unable to obtain documentation from the Contract Holder, Producer shall provide Administrator with an internally generated form in lieu of documentation from the Contract Holder listing at minimum: Contract Holder, Contract number, date of cancellation, and reason for cancellation.

3.5. Producer shall submit to the Administrator any request for Contract cancellation from the Finance Company financing the purchase of the Contract upon written receipt. Producer shall, if applicable, retain a copy of the Finance Company's written request for cancellation and shall make such documentation available at Administrator's request. If Producer is unable to obtain documentation from the Finance Company, Producer shall provide Administrator with an internally generated form in Lieu of documentation from the Finance Company listing at minimum: The Contract Holder, Contract number, date of cancellation, and reason for cancellation.

3.6. Upon request by Contract Holder to the Finance Company to cancel a Contract, Producer shall cancel such Contract and Producer shall be solely responsible to remit to the Contract Holder or

HEADSTART

Finance Company that portion of the Contract Charge to be refunded under the terms of the Contract in accordance with applicable state law on behalf of Administrator and Producer.

3.7. In the event any requests for cancellation of a Contract are made directly to Administrator, Administrator shall forward requests to Producer for processing in accordance with the terms set forth herein.

3.8. Administrator's liability for refunding its portion of the Contract Charge from the Administrator Payment shall survive cancellation, termination, or expiration of this Agreement.

3.9. Producer's liability for refunding its portion of a Contract Holders or Finance Company's refund shall survive cancellation, termination, or expiration of this Agreement.

3.10. Producer will pay and/or cause to be collected from Contract Holders (if so permitted by applicable statutes, laws, rules, and regulations), and properly remit to the required authorities, all federal, state and local taxes assessed or payable with respect to the sale or issuance of Contracts.

4. <u>Programs, Rates, and Reserves</u>

4.1. Administrator must regularly review and make reserve and classification changes to ensure actuarial soundness of the programs. Administrator may take any action to ensure the actuarial soundness of the programs including, but not limited to, increasing the reserve required on future service contracts or surcharging future service contracts. Administrator will notify Producer of the nature of the action to be taken. Producer agrees to act in accordance with Administrator's request, to increase the rates required on future service contracts and/or surcharge future service contracts as the case may be.Administrator reserves the right to reject any program application; to cancel, refuse to renew, or modify any program.

4.2. Modification includes, but is not limited to, adding, deleting, or re-classing vehicle models, and/or adjusting program pricing. We may discontinue or withdraw from you and your sales representatives any of our programs upon thirty (30) day notice.

5. <u>Cancellation of Service Contracts</u>

5.1. Service Contract may be cancelled by the Customer at any time, including when the Vehicle is sold, lost, stolen or destroyed. A cancellation form indicating the odometer reading at the date of the request, if applicable, will be required.

5.2. A Service Contract may be cancelled by the Administrator for non-payment of the Contract charge, or for a misrepresentation by the Customer in obtaining the Service Contract or in submitting a claim. Administrator will refund customer upon Administrator's cancellation of the Service Contract the greater of a) the days in force or b) the mileage elapsed based on the term of the Service Contract, less a service charge (which depends on state regulations).

5.3. If Service Contract has been financed through a third-party finance company, or financed with a vehicle loan, the lien holder or finance company may cancel the Service Contract at any time for non-payment. If any refund is owed on the Service Contract, the lien holder or finance company shall be entitled to any resulting refund.

HEADSTART

5.4. If the Service Contract is cancelled within the first thirty (30) days and no claim has been filed, the entire Service Contract charge paid will be refunded. After thirty (30) days or if a claim has been filed, an amount of the unearned Service Contract charge will be refunded according to the pro-rata method reflecting the greater of the days in force or the mileage driven based on the term of the Service Contract and the date or miles when Coverage begins. Elapsed time and mileage shall be measured from Service Contract sale date and zero (0) miles for New Vehicles or Service Contract sale date and Service Contract sale mileage for Used Vehicles.

5.5. Producer agrees to ensure that all refunds, if received by Producer, are forwarded to the appropriate parties where applicable. Service Contract may be cancelled by the Customer at any time, including when the Vehicle is sold, lost, stolen or destroyed. A cancellation form indicating the odometer reading at the date of the request, if applicable, will be required. A Service Contract may be cancelled by the Administrator for non-payment of the Contract charge, or for a misrepresentation by the Customer in obtaining the Service Contract or in submitting a claim. Administrator will refund customer upon Administrator's cancellation of the Service Contract the greater of a) the days in force or b) the mileage elapsed based on the term of the Service Contract less a service charge (which depends on state regulations).

5.6. If Service Contract has been financed through a third-party finance company, or financed with a vehicle loan, the lien holder or finance company may cancel the Service Contract at any time for non-payment. If any refund is owed on the Service Contract, the lien holder or finance company shall be entitled to any resulting refund.

5.7. In the event the Producer collects a down payment or entire payment for the Vehicle Service Contract that the Producer sells a consumer, the Producer shall be liable for paying this down payment to the consumer in the event the Consumer cancels his, her, or their Vehicle Service Contract within the first 60 days. In the event the Producer fails to remit this within a timely fashion, the Consumer shall be able to contact the producer and pursue any and all reasonable efforts to recover funds collected from the Producer.

5.8. Producer agrees to ensure that all refunds, if received by Producer, are forwarded to the appropriate parties where applicable. Administrator will have the right to request proof of payment made by Producer by either cancelled check or proof of money being withdrawn from Producer's bank account.

5.9. Administrator shall have the right to request, at least monthly, a complete registry of cancellation refunds that have been processed in the prior month by the Producer. Upon request, Producer shall produce for Administrator the corresponding cashed check or ledger entry where applicable.

6. **Advertising**

6.1. Producer is prohibited from issuing any advertising or promotional material, or in any other manner using Administrator's name, underwriter's name, or insurer's name without first obtaining the specific written approval of the Administrator. All marketing or advertising that includes the solicitation or reference of Service Contracts or Programs authorized by the Administrator, whether it be direct mail, print or internet advertising or solicitation, telephonic or text messaging, facsimile, television or other



subject to approval by the Administrator. Producer shall provide true and correct copies of any or all such marketing or advertising to the Administrator upon request.

6.2. Any corporate name, trade names, trademarks, service marks or service names owned by Administrator or Producer shall remain the exclusive property of their respective owners. As to the terms and conditions of a Private Labeled Service Contract Program covered by this agreement, Producer owns only the program name, not exclusivity to any part of the actual terms and conditions.

6.3. Producer may create and maintain an Internet web site for the purpose of supporting its direct marketing business that is the subject of this Agreement. Such web site may only be used to assist in promoting Service Contract sales to consumers via a consumer initiated/ requested live sales call with Producer or Producer's sales representatives. Under no circumstances is it permissible for such web site to be optimized for direct sales of our Service Contracts via the Internet without a consumer initiated/requested live sales call with Producer or Producer's sales representatives.

6.4. Producer is prohibited from displaying on its Website any promotional materials, images, sales tools, rate charts or other information created by the Administrator to provide information about the Program sold by the Producer in accordance with the terms of this Agreement without first obtaining written approval from Administrator. Such requests will be reviewed on a case-by-case basis and may be approved or denied by Administrator solely at Administrator's discretion. If approval is granted, and Administrator later decides the use of these is not consistent with Administrator policy, Administrator will require Producer to remove these items, and Producer agrees to do so immediately. The decision to require removal of these items is also solely at Administrator's discretion.

6.5. With respect to the sale of Programs authorized by the Administrator, Producer is permitted to engage only in the form of marketing, sales or related activities (a) stated in the Marketing Information section of the Seller Profile and (b) approved by the Administrator in writing. Producer may not engage in any other method of marketing without written consent of the Administrator as it concerns the Producer's sale of Programs authorized by the Administrator.

6.6. If Producer violates any term or condition of this Section 6, it shall be considered a material breach of this Agreement and the Administrator shall have the right to immediately terminate this Agreement without notice.

7. Claim Approval

Administrator has the ultimate responsibility to approve or disapprove, pay or deny payment of any claim, claim expense, adjustment expense or legal expense under any Service Contract issued by Producer subject to the terms and conditions of the Vehicle Service Contract.

8. Representations and Warranties of Producer

8.1. Producer has the right, power, and capacity, and is duly authorized and empowered, to enter into, execute, deliver and perform under this Agreement. This Agreement constitutes the legal, valid and binding obligation of the Producer and is enforceable in accordance with its terms.

HEADSTART

8.2. Producer is, and at all times hereafter shall be, duly organized and existing in good standing under the laws of the state of its formation and is, and at all times hereafter shall remain, qualified or licensed to do business in all states in which the laws thereof require Producer to be so qualified and/or licensed.

8.3. The execution, delivery and/or performance by Producer of this Agreement shall not, by the lapse of time, the giving of notice or otherwise, constitute a violation of any applicable law or a breach of any provision contained in its organizational, charter, or governing documents, or similar document, or in any agreement, instrument or document to which it is now or hereafter may be a party, or which it is or may become bound.

8.4. Producer's employees engaged in the sale and issuance of Contracts have and will maintain all necessary licenses to perform their obligations under this Agreement.

8.5. Producer, and its employees engaged in the sale and issuance of Contracts, shall remain in compliance with all current and future applicable insurance laws and/or regulations governing the sale and issuance of Contracts.

9. **Producer's Duties**

9.1. Distribute only Administrator approved sales materials at its discretion to prospective Contract Holders in the Territory.

9.2. Comply with the applicable provisions of all federal and state laws and regulations, including but not limited to the "National Do Not Call Registry" maintained by the Federal Trade Commission (FTC), including, but not limited to, the FTC Telemarketing Sales Rule (TSR), relating to the marketing or sales of Contracts, and shall obtain and maintain any and all licenses required to market and/or sell Contracts in all applicable states. Payment of any penalties, fines or damages incurred by the Producer's non-compliance with including but not limited to, the aforementioned, is the sole responsibility of the Producer and not the Administrator.

9.3. Perform in good faith and to the best of its ability and dedicate such time to the performance of the Agreement as is necessary to carry out its obligations under this Agreement. Comply with all applicable laws, and will require all of its employees and other agents to comply with all applicable laws, meaning all environmental, health, or safety laws, consumer laws, labor and employment laws, and all other laws, rules, regulations codes, plans, injunctions, judgments, orders, decrees, and rulings of federal, state, and local governments, and all agencies thereof,
that apply or have jurisdiction over the Producer during its performance of this Agreement.

9.4. Comply, in all ways, with the requirements of the Telephone Consumer Protection Act (the "TCPA") including, but not limited to, doing each of the following to satisfy the requirements of the "safe harbor" provisions of this act:

(a) Prepare and maintain written internal procedures in place that satisfy the requirements of the TCPA;

(b) Institute internal processes and protocols so that the written procedures are always followed by employees and agents;

(c) Create internal, reliable documentation that these processes and protocols are being followed;

(d) Create and maintain records that show training of employees, agents, and any entities assisting in compliance, in the procedures, processes and protocols Producer has established to maintain compliance under TCPA;

(e) Maintain records showing the consistent purchase of the federal do not call list directly from the administrator of the national list, without cost sharing;

(f) Maintain documentation showing that the federal do not call list is scrubbed against all internal call lists every 31 days;

(g) Create and maintain in-house suppressions lists that will include the lists of telephone numbers that cannot be called;

(h) Maintain error tracking records for calls made to someone on the do not call list, demonstrating that those calls were made in error and do not exceed the number of erroneous calls made to any one person allowed under the TCPA. Ensure that all consumer information (names, addresses, vehicle information, etc.) has been lawfully obtained by Producer and can be legally used for direct solicitations.

9.5 Immediately notify Administrator of any complaint or legal action commenced against Producer, Administrator or its insurance carrier by any Contract Holder, federal or state regulatory office, Better Business Bureau, private attorney or legal counsel, or any other entity involving a Contract or its marketing. Producer shall provide a copy of all legal documents received (summons, complaints, motions, orders, or any other legal document) by facsimile and express mail service within 24 hours of receipt to the facsimile number and address provided within this Agreement.

9.6 Assist prospective Contract Holders by explaining the terms of the Contract, and by answering any contract relatedquestions.

9.7 Make no statements or representations concerning any Contract which are misleading, inaccurate, or inconsistent with the terms of this Agreement or any Contract.

9.8 Issue Contracts in accordance with the guidelines set out by Administrator. Producer shall not take any actions inconsistent with any written guidelines or procedures provided by Administrator.

9.9 Adhere to all Contract eligibility criteria established by Administrator, including but not limited to criteria concerning vehicle make, model, year, and mileage.

HEADSTART

9.10 Utilize those telemarketing or direct marketing scripts approved by Administrator, in its sole discretion

9.11 Abide by all terms and conditions of any other agreement executed by Producer in connection with this Agreement.

## 10. Term, Termination and Cancellation

10.1 The Agreement term ("Term") shall be that period of time that commences on the date hereof and shall continue for a period of Three (3) years unless earlier terminated as provided in this Agreement. The Agreement shall automatically renew for one (1) year Terms unless terminated as set forth herein.

10.2 Administrator and Producer shall each have the right to cancel the Agreement at any time, such cancellation to take effect thirty (30) days after delivery of written notice of cancellation.

10.3 The Agreement shall terminate immediately if either party becomes insolvent, makes an assignment for the benefit of its creditors, or upon the filing of a petition of voluntary bankruptcy, which is not dismissed within ninety (90) days.

10.4 The Agreement shall terminate immediately upon any breach of this Agreement, or upon any fraud or misrepresentation.

10.5 If any regulatory agency requires the termination of this Agreement, in which case termination shall be effective immediately.

10.6 In the event of any termination of this Agreement, each party's respective obligations with regard to any Contract sold prior to the effective date of termination shall continue in full force and effect until such obligations are discharged in accordance with the terms and conditions of such Contract. Not later than thirty (30) days after cancellation Producer shall remit all unused materials to Administrator and shall provide Administrator with a full accounting of all Contracts sold by Producer.

## 11. Confidentiality and Information Protection

The term "Confidential Information" shall mean this Agreement and all data, trade secrets, business information and other information of any kind whatsoever that Administrator discloses, in writing, orally, visually or in any other medium to the Producer or to which Producer obtains access relating to Administrator or its affiliates and their respective directors, officers, employees, agents, representatives, customers, third-party vendors or licenses. Confidential Information includes customer information, as defined below. A "writing" shall include any electronic transfer of information by e-mail, over the internet or otherwise.

Producer acknowledges that Administrator and its Affiliates have a responsibility to its customers, Contract Holders, and other consumers using its services to keep information it has



HEADSTART

received or produced about their usage of its services and about their accounts ("Customer Information") strictly confidential. Each of the parties hereby agrees that it will not, and will

cause its representatives, consultants, Affiliates and independent contractors not to disclose Confidential Information of the other party, including Customer Information, during or after the Term of this Agreement, other than on a "need to know" basis and then only to: (i) Affiliates of Administrator; (ii) Administrator or Producer employees or officers; (iii) Administrator independent contractors, agents and consultants, provided that all such persons are subject to a written confidentiality agreement that shall be no less restrictive than the provisions of this Section; (iv) pursuant to the exceptions set forth in 15 U.S.C. 6802(e) and accompanying regulations, which disclosures are made in the ordinary course of business; and (v) as required by law or as otherwise expressly permitted by this Agreement. Each party shall treat Confidential Information of the other party with no less care than it employs for its own Confidential Information of a similar nature that it does not wish to disclose, publish or disseminate.

Producer shall notify Administrator of any actual or threatened requirement of law to disclose Confidential Information promptly upon receiving actual knowledge thereof and shall cooperate with Administrator's reasonable, lawful efforts to resist, limit or delay disclosure. Nothing in this section shall require any notice or other action by Administrator in connection with requests or demands for Confidential Information by bank examiners.

Producer acknowledges that Administrator is required to comply with the information security standards required by the Gramm-Leach-Bliley Act (15 U.S.C. 6801, 6805 (b)(1)) and the regulations issued there under (12 C.F.R. Part 40) and with other statutory, legal regulatory requirements as well as its internal information security program for information protection. If applicable, Producer shall make reasonable efforts to assist Administrator's compliance and conformance with its own policies for information protection. Producer's information security programs shall contain at least those elements specified by Administrator after consultation with Producer. Producer shall require any subcontractors who hold Confidential Information to implement an information protection program and plan substantially equivalent to Producer.

12. **Indemnification**

12.1 Administrator agrees to indemnify and hold harmless Producer from any and all consumer claims for any refund amounts owed by Administrator.

12.2 Producer agrees to indemnify and hold harmless Administrator from all consumer claims, for any refund amounts owed by Producer, and for all actions or inactions of its agents, employees, representatives or sub-contractors regarding Contract cancellation.

12.3 Producer agrees to fully indemnify and hold harmless Administrator against any loss or liability, including but not limited to, fines, penalties, claims or other charges, known or unknown, absolute or contingent, matured or unmatured, liquidated or unliquidated, suits, damages, costs, judgments, awards and attorney's fees, threatened or suffered by Administrator, arising out of consumer claims, class actions, TCPA violations, or any material inaccuracy of the representations and warranties of Producer contained in this Agreement or any material breach




of Producer's duties under this agreement, or any willful or negligent misconduct of Producer. The obligations of Producer contained in this section shall survive any termination or cancellation of this Agreement.

12.4 If Producer is unable or unwilling to reimburse Administrator for legal costs associated with defending itself from any legal actions, Administrator is entitled to any profit share or reinsurance earned and unearned reserves that Producer may be entitled too from a reinsurance, retrocession or profit share agreement. Without permission from Producer, Administrator has the right to withdraw funds from any Trust Custodial bank account or any other bank account established on behalf of Producer until Administrator is fully indemnified.

## 13. General

13.1 **Independent Contractor.** Administrator is and shall be an independent contractor. Administrator shall not be deemed to be an employee of Producer. Producer is and shall be an independent contractor, having an independent business separate and apart from Administrator. Producer is not an 'agent' of Administrator. Nothing herein contained in this Agreement shall be construed so as to create a partnership or joint venture; and neither party hereto shall be liable for the debts or obligations of the other. Producer shall not have the power to hire or fire Administrator's employees and Producer may not in any other way exercise dominion or control over Administrator's business. Neither party is intended to have, and neither of them shall represent to any other person that it has any power, right or authority to bind the other, or to assume, or create, any obligation or responsibility, express or implied, on behalf of the other, except as expressly required by this Agreement or is otherwise permitted in writing.

13.2 **Assignment.** This Agreement may not be assigned or transferred, by either party without the prior written consent of the otherparty.

13.3 **Changes and Waivers.** This Agreement may be amended or modified, and the terms and conditions of this Agreement may be waived, only by the written consent of both parties.

13.4 **Entire Agreement.** This Agreement sets forth the entire agreement and understanding of the parties with respect to the transactions contemplated hereby and replaces and supersedes all previous agreements between the parties.

13.5 **Venue and Governing Law.** The parties hereto agree that this Agreement shall be governed by the laws of the State of Texas, and that the sole and exclusive venue for all legal disputes between parties shall be the federal and state court located in Tarrant County, Texas. Both parties hereto agree to waive any defenses based upon alleged lack of personal jurisdiction, improper venue or inconvenient forum.

13.6 **Dispute Resolution.** Producer and Administrator agree that they shall first engage in a good faith effort to negotiate all disputes, controversies or claims of any kind or nature between them arising out of or in any way related to this Agreement, its interpretation, performance or breach. Said negotiations may be verbal or written. To the extent these negotiations are verbal they must be confirmed in writing. If the above stated negotiations are unsuccessful, Producer and Administrator shall engage in mediation pursuant to the American Arbitration Association

HEADSTART

Commercial Mediation Rules, or such other mediation rules as the parties may otherwise agree to choose. Pursuing mediation is a prerequisite to filing any legal action based upon or relating to this Agreement.

13.7 **Severability.** If any one or more of the provisions contained in this Agreement shall be or become invalid, illegal or unenforceable in any respect under any applicable law, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired.

13.8 **Notices.** All notices and communications required or desired to be given in connection with this Agreement shall be deemed to have been duly delivered when delivered in person or when mailed by certified mail, return receipt required, or nationally recognized next-day delivery service as follows:

If to **Administrator:**

Headstart Warranty Group 14114
N Dallas Pkwy, Ste 600
Dallas, TX 75254
Attn: CEO

If to **Producer:**

Amazon Warranty LLC
3231 Spectrum
Irvine, CA 92618

13.9 **Auditing.** Producer shall keep accurate books and records pertaining to the marketing of the Contracts in accordance with applicable legal and industry standards. Administrator and or its insurance carrier shall have the right, at reasonable times and at its own costs, to inspect, examine and copy Producer's books and other records concerning Producer's performance hereunder at any time during which a Contract is in force, or when investigating a claim made under a Contract. These inspection rights shall survive for up to seven (7) years after the termination of this Agreement.

13.10 **Waiver.** No failure by any party hereto to exercise or delay by any party hereto in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, power or privilege.

13.11 **Rights of Creditors and/or Third Parties Under the Agreement.** This Agreement is entered into between Administrator and Producer for the exclusive benefit of Administrator and Producer and their respective successors and permitted assigns and expressly not intended for the benefit of any other party. Except and only to the extent provided by applicable law, no other creditor or third party shall have any rights under this Agreement.

HEADSTART

**IN WITNESS WHEREOF**, the parties have duly executed this Agreement to be effective as of the Effective Date first set forth above.

Company: HEADSTART WARRATY GROUP

BY: ______________________ Date: 11/3/21

Print Name: Tim Schuur

Company:

BY: ______________________ Date: November 3 2021

Print Name: Mariam Nasrati

Schedule A

Addendum to PRODUCER Agreement

| [illegible] | [illegible] |
|---|---|
| | All, except: |
| | |
| | |
| | |
| | |
| | |
| | |

ADMINISTRATOR shall grant to PRODUCER the right to sell the listed product(s) in the designated Territory as long as this Agreement is in force and has not been terminated by either party, and PRODUCER has not been ordered to cease acting under this Agreement for any reason.